# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILL EL and BEYSHAUD EL, | ) |
| Plaintiffs, | ) |
| v. | ) 2:15-cv-00834-NBF |
| | ) District Judge Nora Barry Fischer |
| CITY OF PITTSBURGH, ET AL., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

This case was initiated via Complaint (Docket No. 1) filed on June 23, 2015, by Will El and Beyshaud El (*collectively* "El brothers" or "Plaintiffs"). An Amended Complaint (Docket No. 25) followed on October 14, 2015, and the present Second Amended Complaint (Docket No. 35) was ultimately filed on November 4, 2015. Plaintiffs advance claims against three City of Pittsburgh Police officers pursuant to 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution, as well as for assault and battery in violation of state law, and against the City of Pittsburgh pursuant to *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658 (1978). The Office of the District Attorney of Allegheny County filed the instant Motion for Protective Order (Docket No. 76) on June 12, 2017, following the deposition of the prosecutor assigned to Plaintiffs' underlying criminal case, in response to questioning allegedly designed to elicit privileged information. For the reasons that follow, the Motion shall be GRANTED.

## II. Factual[1] & Procedural Background

On or about July 2, 2013, at approximately 1:30 p.m., Plaintiff Will El was at the One Stop Convenience store with his brother, Plaintiff Beyshaud El, located on the corner of Frankstown Road and North Homewood Avenue in the Homewood area of the City of Pittsburgh. (Docket No. 35 ¶ 11). After purchasing items at the convenience store, the El brothers exited the store and began walking down North Homewood Avenue toward their home. (*Id.* ¶ 12). Beyshaud was carrying a pack of menthol cigarettes in his left hand. (*Id.* ¶ 13).

At that time, Defendant Reyne Kacsuta, a lieutenant from the Pittsburgh Police Zone 5 station, was monitoring activity in the general area of the One Stop Store. (*Id.* ¶ 14). Lieutenant Kacsuta alleged that she observed a greenish foil item in Beyshaud's left hand and that he looked in her general direction more than once. (*Id.* ¶ 15). Lieutenant Kacsuta also alleged that Beyshaud moved his hand toward the center of his body. (*Id.* ¶ 16). Lieutenant Kacsuta did not make any noted observations of Plaintiff Will or mention anything in her report regarding Will. (*Id.* ¶¶ 15-16). Based on the foregoing observations, and having allegedly received "several" uncorroborated allegations during the previous year that synthetic marijuana was sold from the "One Stop," Lieutenant Kacsuta stated in her supplemental report that she had "reasonable suspicion" to stop and detain Plaintiffs. (*Id.* ¶ 17).

Lieutenant Kacsuta then asked Beyshaud if she could talk to him. Beyshaud alleges that, pursuant to Pennsylvania law regarding mere encounters, he chose not to stop while informing Lieutenant Kacsuta that his mother was waiting for their return. Plaintiffs then continued to walk in a normal manner up North Homewood Avenue toward their home. No observations of Will were made, nor did Will make any comments. (*Id.* ¶ 18). Lieutenant Kacsuta stated that

---

[1] The Court recites the facts as alleged in Plaintiffs' Second Amended Complaint. (Docket No. 35).

Beyshaud's denial of her request and his continuing to walk home "heightened her suspicion of the Plaintiffs." (*Id.* ¶ 19).

Lieutenant Kacsuta then turned her vehicle around to follow Plaintiffs for the ostensible purpose of initiating an investigatory detention. According to Plaintiffs, Lieutenant Kacsuta then believed that she had a sufficient basis to stop and detain both brothers because of what might have occurred during the few seconds she lost sight of Plaintiffs while she turned her vehicle around. (*Id.* ¶ 20). Lieutenant Kacsuta pulled her vehicle up to Plaintiffs who were walking at a normal pace and ordered both of them to stop. She also initiated a code three police alert and called for immediate backup. (*Id.* ¶ 21). In response to the code three, six officers appeared as back-up for Kacsuta's stop and detention, including co-Defendants Frank Welling and Ryan Warnock. (*Id.* ¶ 22).

Plaintiffs heeded Lieutenant Kacsuta's demand to stop and emptied the contents of their pockets immediately as back-up officers were within one block. Plaintiff Will also lifted his shirt to show Kacsuta that he had not concealed anything in or around his waist area. At that time, Lieutenant Kacsuta ordered both men to the ground, and Will immediately sat down as ordered. (*Id.* ¶ 25). Kacsuta then noticed that the "green foil" item that allegedly gave her reasonable suspicion to investigate/stop Plaintiffs was merely a pack of cigarettes. The lieutenant, however, did not allow either Plaintiff to leave, claiming that she had to confirm whether Beyshaud was committing the crime of illegally possessing tobacco as a minor. (*Id.* ¶ 26). Will was not included in this alleged suspicion. (*Id.*)

Plaintiffs contend that despite what appears on a patrol vehicle video to be a review of Beyshaud's identification by Lieutenant Kacsuta, both brothers continued to have their freedom of movement restricted as the officers ordered them to remain on the ground. (*Id.* ¶ 27).

Throughout the detainment, Will repeatedly stated that he did nothing wrong and that he wanted to go home. Despite this, the officers ordered him to remain on the ground as he was not free to leave. (*Id.* ¶ 28). After completing her alleged review of Beyshaud's identification, Lieutenant Kacsuta dropped his identification to the ground. As Beyshaud attempted to retrieve his wallet, Lieutenant Kacsuta intentionally stepped on the wallet and again ordered Plaintiffs to stay on the ground. (*Id.* ¶ 29). At that time, Will again stated that he did nothing wrong, that he and his brother were being harassed, and that he wanted to go home. Will stood up in hopes that he could finally go home. (*Id.* ¶ 30).

According to Plaintiffs, the officers allege that Will made a fist with his right hand and made a "punching motion" toward Officer Welling. Plaintiffs aver that video evidence will show that Will was smoking a cigarette with his right hand and could not make a fist without dropping his cigarette. (*Id.* ¶ 31). At that time, Officer Welling attacked Will, knocking him back against a door. As a result, Will suffered multiple contusions, lacerations, and abrasions. (*Id.* ¶ 32). After the alleged attack on his brother, Beyshaud stood up to protect him. Officer Welling placed his hands on Beyshaud's chest. Beyshaud pushed Officer Welling's hands away and was tasered by Officer Warnock. (*Id.* ¶ 33).

The El brothers were subsequently arrested and charged with aggravated assault on police officers. (*Id.* ¶ 34). On February 11, 2014, District Attorney Stephen Zappala reviewed the videotaped transcript related to the police encounter and issued a letter[2] ordering that the charges against Will be withdrawn and the aggravated assault charges against Beyshaud be amended to a summary disorderly conduct. (*Id.* ¶ 35; Docket No. 78-2). On February 12, 2014, Lieutenant

---

[2] The letter was addressed to Michael Huss, Director of the City of Pittsburgh Department of Public Safety, and Regina McDonald, Chief of the City of Pittsburgh Bureau of Police. Rebecca Spangler, First Assistant District Attorney, Kristen Pauli, Assistant District Attorney, David Hickton, United States Attorney for the Western District of Pennsylvania, Celeste Whiteford, Esquire, and Jason Nard, Esquire, were also provided copies.

Kacsuta requested a meeting with Mr. Zappala to discuss the case. (Docket No. 78-3). Both Plaintiffs were ultimately charged with disorderly conduct. (Docket No. 35 ¶ 36).

Plaintiffs filed their Second Amended Complaint on November 14, 2015. (Docket No. 35). Count I asserts Section 1983 claims for excessive force in the arrest of Plaintiffs, in violation of the Fourth and Fourteenth Amendments to the United States Constitution. (*Id.* ¶¶ 37-47). Count II asserts a Section 1983 municipal liability claim against the City, under both a policy/custom and a failure-to-train theory. (*Id.* ¶¶ 48-58). Count III asserts a state-law claim for assault and battery. (*Id.* ¶¶ 59-60). Defendants filed their Answers (Docket Nos. 36 and 57), and denied all claims of impropriety and allegations of fact in support of same. The Court thereafter convened a Case Management Conference on March 10, 2016 (Docket No. 58), setting the timeline for fact discovery. A Stipulated Protective Order was entered on December 19, 2016.[3] (Docket No. 67).

On May 31, 2017, during the deposition of Kristin Pauli, the assistant district attorney responsible for prosecuting Plaintiffs, counsel for the Office of the District Attorney of Allegheny County objected to a line of questioning posed by Plaintiffs' counsel, claiming various privileges. (Docket No. 74). Consequently, counsel contacted the Court, and a Telephonic Status Conference was convened (Docket No. 74). Following brief oral arguments by both sides, the Court instructed counsel for the Office of the District Attorney to file a motion for a protective order on or before June 12, 2017. (Docket No. 75). A Motion followed on June 12, 2017 (Docket No. 76), and Plaintiffs' counsel filed their Response (Docket No. 78) on June 22, 2017. Counsel for the Office of the District Attorney and counsel for the Defendants filed

---

[3] Among other provisions, the Order states that "[a]ll portions of depositions to which the DA objects as 'Confidential pursuant to CHRIA' shall be so designated by the court reporter who transcribes the deposition." (Docket No. 67 at 2). No mention is made of any privileges pertaining to the questioning presently at issue. To that end, the Court cannot recall any indication that Plaintiffs' counsel would pursue such questioning, and the evidence sought therefrom, at the time of the initial Rule 16 conference.

respective Replies on June 28, 2017. (Docket Nos. 80 and 81). A hearing was convened on June 30, 2017, at which time the Court heard oral argument on the matter.[4] (Docket No. 83). The Motion is ripe for disposition.

### III. DISCUSSION

During Kristin Pauli's deposition, Plaintiffs' counsel repeatedly asked why the Office of the District Attorney filed the charges to which the Plaintiffs' pled guilty. Counsel for the District Attorney repeatedly objected on the ground of privilege, specifically: (1) work-product doctrine; (2) deliberative process privilege; and (3) legal opinion. In its briefing on the matter, and during oral argument before the Court, the District Attorney also questioned the relevance of such queries in a case involving only claims pertaining to the use of excessive force. In response, Plaintiffs deny that any of these privileges apply, and indicated in both their briefing and during oral argument before the Court that the information sought is relevant because it would show that a "prosecutorial decision not to bring charges against the Plaintiffs would have taken into account whether there was probable cause that Plaintiff's had committed a crime, which is directly relevant as to whether the officers illegally arrested them."[5] (Docket No. 79 at 14).

#### 1. *Attorney Work-Product Doctrine*

Federal Rule of Civil Procedure 26(b)(3) governs the attorney work-product doctrine. *Travelers Prop. Cas. Co. of Am. v. USA Container Co., Inc.*, 2012 WL 12898823, at * 19 (D.N.J. Oct. 25, 2012). It provides, in pertinent part, that:

(3) Trial Preparation: Materials.

---

[4] Counsel for the parties did not request preparation of the transcript.

[5] Counsel for Plaintiffs also argued that it was an attempt by Defendants to avoid potential liability.

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A) and (B).

This doctrine was created to shield from discovery any materials prepared by an attorney for his or her client in anticipation of litigation. *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 277 (W.D. Pa. 2014) (citing *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990)). *See also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661 – 62 (3d Cir. 2003) (quoting *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975)) ("The work product doctrine is governed by a uniform federal standard…and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'"). The caveat, 'in anticipation of litigation,' encompasses any document "'prepared or obtained because of the prospect of litigation.'" *Serrano, LLC*, 298 F.R.D. at 277 (quoting *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)). This holds true even if the materials were not prepared for the litigation in which disclosure of same was sought. *In re Grand Jury (00-2H)*, 211 F.Supp.2d 555, 559 (M.D. Pa 2001). Nonetheless, the party seeking the protection of this doctrine bears the burden of demonstrating that it applies. *Serrano, LLC*, 298 F.R.D. at 277.

Plaintiffs argue that the work-product doctrine should not apply to Pauli's potential answers as to "why" certain charges were ultimately brought against Will El. In support of this contention, Plaintiffs cite a number of cases, including two district court cases within the Third Circuit, to argue that materials prepared in anticipation of prosecution of a closed criminal case are not shielded from discovery in a civil case – even when the civil case is related – because there is no danger of interference with prosecution of the criminal case or that Plaintiffs will 'free load' off the work of the District Attorney. The cases of *Carter v. City of Phila.*, 2000 WL 632988 (E.D. Pa. May 5, 2000), and *Wong v. Thomas*, 238 F.R.D. 548 (D.N.J. 2007), do provide support for this argument. What Plaintiffs neglect to address, however, is that in both of these cases, the district courts note that even when factual matter in otherwise protected work-product is discoverable, the "mental impression, conclusions, opinions, or legal theories of an attorney" are not. *Carter*, 2000 WL 632988, at * 2; *Wong*, 238 F.R.D. at 552. When Plaintiffs' attorney asks "why" the Office of the District Attorney made certain decisions pertaining to the charges filed against the El brothers, this is precisely the type of information sought. Accordingly, it appears that the work-product doctrine covers the subject matter of Plaintiffs' disputed questions.

## 2. *Deliberative Process Privilege*

This Court has previously held that:

> [t]he deliberative process privilege is the most frequently invoked form of executive privilege. *In re Sealed Case*, 121 F.3d at 737. Even so, "the deliberative process privilege, like other executive privileges, should be narrowly construed." *Redland Soccer Club, Inc. v. Department of Army of U.S.*, 55 F.3d 827, 856 (3d Cir.1995) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980)).

> Even after establishing that this privilege has been appropriately invoked, a district court also must be satisfied that a privilege claimant has satisfied two elements. Siee *Redland* Soicer *Club*, 55 F.3d at 854. First, a district court must determine whether the communications are in fact privileged. *Id*. Next, the court must balance the parties' interests. *Id*.

> With respect to the first element, the deliberative process privilege permits the government to withhold documents containing "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir.1987) (citing *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150–54, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *Sears Roebuck*, 421 U.S. at 151, 95 S.Ct. 1504.
>
> The burden lies with the government to show that the privilege applies. *Id.* (citing *Schreiber v. Society for Savings Bancorp.*, 11 F.3d 217, 221 (D.C.Cir.1993)). To meet this burden, the government must present more than "a bare conclusion or statement" that the documents sought are privileged. *Redland Soccer Club*, 55 F.3d at 854. The proper exercise of this privilege falls within the court's purview: it must be the court, not the agency, which determines that availability of the privilege. *See id.*
>
> The privilege does not extend to factual information, even when that information is contained within an otherwise protectable document. *See In re Grand Jury*, 821 F.2d at 959; *Paisley v. C.I.A.*, 712 F.2d 686, 699 (D.C.Cir.1983). Nor does the privilege extend to "communications made subsequent to an agency decision." *Redland Soccer Club*, 55 F.3d at 854 (citing *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir.1993)).
>
> If a court is satisfied that the privilege should apply to the relevant information, the court must next balance the parties' interests. A court's considerations should include at least: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Redland Soccer Club*, 55 F.3d at 854 (quoting *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 n. 5 (D.C.Cir.1994)).

*Chisler v. Johnston*, 796 F.Supp.2d 632, 639 – 40 (W.D. Pa. 2011) (Fischer, J.). In light of the above, the deliberative process privilege also protects the information sought from Pauli.

The questioning of Pauli by Plaintiffs' counsel pertains to the reasoning behind why certain determinations were made as to the withdrawal, and ultimate amendment, of the charge against Will El. (Docket No. 78 at 3 – 6). Plaintiffs argue that the information sought from Pauli is all "post-decisional," and presuppose that Pauli had no part in the decision-making process. However, both District Attorney Stephen Zappala and First Assistant District Attorney Rebecca

Spangler attest via affidavit that Pauli was a part of the decision-making process and, therefore, any information she would provide would not be mere "communications made subsequent to an agency decision." (Docket Nos. 76-8 and 76-9). As such, application of the privilege is appropriate as to deliberations of law or policymaking, and the exchange of opinions, recommendations, or advice between Pauli, Zappala, and Spangler. *Chisler*, 796 F.Supp.2d at 639 – 40.

Moreover, when looking at the factors utilized by courts to balance the interests of the parties, the first factor pertaining to the relevance of the information sought is particularly significant. As noted by the Office of the District Attorney in its briefing, and the police officer Defendants in their Reply, the District Attorney's decision to file certain charges against the El brothers has no bearing upon whether the degree of force used by the Defendant police officers was actually excessive, and does not make excessiveness more or less probable. (Docket No. 77 at 12). While Plaintiffs' Second Amended Complaint references a "corrupted judicial process" involving the fabrication of evidence and improper "post-arrest conduct" (Docket No. 35 ¶¶ 15, 34), Plaintiffs affirmatively pled causes of action for excessive force, in violation of the Fourth and Fourteenth Amendments, and assault and battery, in violation of state law, alone. (*Id.* ¶¶ 39 – 60). To the extent that post-arrest conduct may be pertinent, Plaintiff's Second Amended Complaint indicates that it is relevant only inasmuch as it illustrates a potential cover-up. (*Id.* ¶ 34). As noted, Plaintiffs did not plead causes of action for anything other than use of excessive force and assault and battery.

The Court recognizes the seriousness of Plaintiffs' allegations against the Defendant police officers and City of Pittsburgh, particularly in light of the current political climate. Here, the Office of the District Attorney of Allegheny County is not a named defendant in this case.

Yet, the Court must also take into account the possibility of future timidity by government prosecutors if forced to disclose the nature of their deliberations. *Chisler*, 796 F.Supp.2d at 639 – 40 (citing *Redland Soccer Club*, 55 F.3d at 854). Further, there is no dispute as to the availability of video recordings of the police and Plaintiffs at the scene of arrest, providing direct evidence of conduct which may or may not ultimately be found to constitute use of excessive force or assault and battery. (Docket No. 77 at 11). Plaintiffs have not demonstrated how prosecutorial deliberations in the Plaintiffs' related state criminal proceedings contribute to proving the case before the Court. Accordingly, the deliberative process privilege applies, given Plaintiffs' areas of inquiry.

### *Legal Opinion*

Lastly, the Office of the District Attorney argues that Plaintiffs seek legal analysis and opinion from Pauli, and such testimony cannot be elicited during a deposition. It is well established that it is "the duty of the court, not of any witness, to explain the law to the jury." *FedEx Ground Package Sys., Inc. v. Applications Int'l, Corp.*, 695 F.Supp.2d 216, 221 (W.D. Pa. 2010) (citing *United States v, Leo*, 941 F.2d 181, 196 (3d Cir. 1991)). *See also Crowley v. Chait*, 322 F.Supp.2d 530, 550 (D.N.J. 2004) ("[I]t is impermissible for a witness to testify as to the governing law."). Here, to the extent Plaintiff's counsel is attempting to compel Pauli to provide a legal opinion or analysis, such testimony shall not be sought.

## IV. CONCLUSION

Based upon the foregoing, to the extent Plaintiffs seek testimony pertaining to the mental impressions, conclusions, opinions, or legal theories of Pauli, Zappala, or Spangler, or deliberations of law or policymaking, and the exchange of opinions, recommendations, or advice between same, such testimony is protected by the attorney work-product doctrine and

deliberative process privilege, and is otherwise excludable as impermissible legal opinion testimony. Accordingly, the Motion for Protective Order is granted.[6]

An appropriate Order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: July 28, 2017
cc/ecf: All counsel of record.

---

[6] The Court also suggests the parties reference its recent Order on Deposition Practice in the case of *Peronis v. United States*, 2:16-cv-01389, Docket No. 44.