IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILL EL, an adult individual and BEYSHAUD EL, an adult individual, ) ) | |
| Plaintiffs, ) | Civil Action No. 2:15-cv-00834-NBF |
| v. ) | |
| CITY OF PITTSBURGH, et al., ) | Judge Nora Barry Fischer |
| Defendants. ) | |

**CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1. The plaintiffs, Will El and Beyshaud El, are brothers and live at an address on Hermitage Street in the City of Pittsburgh. Beyshaud El Depo., p37-38, 44.

2. Beyshaud El was 18 years old on July 2, 2013. Beyshaud El Depo., p18-21.

3. On or around the time of July 2, 2013, Lieutenant Reyne Kascuta was aware of a number of current reports that synthetic marijuana was being sold illegally from the "One Stop" convenience store in Homewood. Reyne Kascuta Depo., 19-28, 34, 37, 41-44. Lt. Kascuta had information that the consistency of the package of suspected synthetic marijuana was foil. Reyne Kascuta Depo., p39.

4. On July 2, 2013, Lt. Kascuta was conducting a police patrol in the area of the "One Stop" due to levels of violence and criminal activity she knew of in the area, as well as recent reports of illegal sales of synthetic marijuana from the "One Stop." Reyne Kascuta Depo., 42-43.

5. On July 2, 2013 plaintiffs went together to the "One Stop." Beyshaud El Depo., p. 22.

6. On July 2, 2013 Lt. Kascuta observed the plaintiffs leaving the same "One Stop" convenience store. When the plaintiffs left the "One Stop," Lt. Kascuta observed a green foil object in the hand of Beyshaud El, he was cupping the object in his hand and Lt. Kascuta was suspicious of the way he was holding the item in front of his body. Reyne Kascuta Depo., p15, 44-45.

1

7. Upon observing these items Lt. Kascuta approached the plaintiffs and asked to speak with them. The Plaintiffs would not speak with Lt. Kascuta, and crossed the street away from Lt. Kascuta's car, moving out of her sight. Reyne Kascuta Depo., p45-47, 49.

8. Lt. Kascuta became suspicious when the two plaintiffs moved out of her sight, so she turned her vehicle around to stop the two plaintiffs to investigate the possible possession of synthetic marijuana. Reyne Kascuta Depo., p48-50.

9. During the initial part of the stop, Lt. Kascuta asked the plaintiffs to sit down multiple times. Reyne Kascuta Depo., p 61-62; Will El Depo., p14,17; Beyshaud El Depo., p22.

10. The plaintiffs, while complaining of harassment, at first complied. Reyne Kascuta Depo., p 61-62; Will El Depo., p14,17; Beyshaud El Depo., p22.

11. However, when they sat down both plaintiffs started removing items from their pockets and throwing them on the ground. Reyne Kascuta Depo., p 61-62; Will El Depo., p14,17; Beyshaud El Depo., p22.

12. When Lt. Kascuta stopped the plaintiffs she called for backup which arrived within a very short period of time. When backup officers arrived, Will El was upset and telling Lt. Kascuta that he felt he was being harassed. Reyne Kascuta Depo., 71, Beyshaud El Depo., p. 22-23; Will El Depo. p 15, 17.

13. Siara Lawniczak was one of the officers to arrive on scene. Her dash camera video was activated and captured the following parts of the stop on video. The other officers to arrive to the scene included Officer Welling, Officer Warnock, and others. Lawaniczak dash camera DVR 3531.

14. During this interaction it became clear to Lt. Kascuta that Beyshaud El was in possession of a tobacco product rather than synthetic marijuana. However, due to Plaintiffs'

youthful appearance, Lt. Kascuta started to investigate whether he was illegally sold/ in possession of tobacco products under the legal age. Reyne Kascuta Depo., p63.

15. During the stop both individuals were telling all of the officers that they felt the stop was harassing. Beyshaud El Depo., p. 25—26.

16. At one point in the stop, despite repeated verbal warnings to sit down, Will El stood up to complain of harassment, moving his feet and arms, gesturing with his arms while holding his right hand in a closed position. Will El Depo., p. 17; 56-57.

17. When Will El stood up, Officer Welling used physical force with hand controls to force him to comply with verbal commands. Will El Depo., p. 17; 56-57. Video Siara Lawaniczak dash camera DVR 3531 13:46:59-13:47:05.

18. Will El admitted he did not need to stand to communicate his feelings of harassment to Lt. Kacsuta or other nearby officers. Will El Depo., p.56-57.

19. Upon Officer Welling's use of force on Will El, Beyshaud El sprang to his feet and stepped towards his brother and Officer Welling, and made a punching motion with his right arm and fist. Video Siara Lawaniczak dash camera DVR 3531 13:47:05-13:47:10

20. When Beyshaud stood up and moved, Officer Warnock deployed his taser, hitting Beyshaud El. Will El Depo. p. 19-20; Beyshaud El Depo., p. 27-29; Ryan Warnok Depo., p. 64-65; 68-69. Video Siara Lawaniczak dash camera DVR 3531 13:47:05-13:47:10.

21. Lt. Kasucata was not immediately physically involved in these physical interactions. Beyshaud El Depo., p. 27. Video Siara Lawaniczak dash camera DVR 3531 13:46:59-13:48:00.

22. Officer Warnock deployed the Taser to an area of Plaintiff's body considered generally safe for Taser deployment and, although there are two prongs to the taser, the charge

3

was deployed only one time, which was automatic with the discharge of the taser. Ryan Warnok Depo., p. 72-74. Video Siara Lawaniczak dash camera DVR 3531 13:47:05-13:47:10.

23. When Beyshaud was hit with the taser he fell to the ground, after which both Plaintiffs were handcuffed and under arrest. Beyshaud El Depo., p. 29; Video Siara Lawaniczak dash camera DVR 3531 13:47:15-13:52:11.

24. Per policy, Beyshaud El was taken to the hospital (Mercy) for medical clearance where he was seen by a nurse and immediately released to the Allegheny County Jail; Beyshaud was not admitted to the hospital for any further observation, care, or other treatment. Ryan Warnok Depo. p. 96-100; Beyshaud El Depo. p. 31-32.

25. Will El was taken to the Allegheny County Jail where he did not request any medical treatment. Will El Depo., p. 25.

26. Plaintiffs were released from the Allegheny County Jail the following day, July 3, 2014. Beyshaud El Depo. p. 33.

27. Other than going to the emergency room five days after the incident on July, 7, 2013, where he complained of a hip contusion (not of any neck injury), Will El did not follow up with any primary care doctors or seek any type of mental health treatment after the incident. Will El Depo., p. 27, 52.

28. After release, Beyshaud El did not follow up the incident with any mental health treatment or other medical treatment other than being admitted to the hospital a few months after the incident, which he suspects was because he was not eating properly. Beyshaud El Depo., p. 34.

29. On April 15, 2014, Plaintiffs' remaining charges stemming from their actions on July 2, 2013, were heard in a bench trial in the Criminal Court Division of the Allegheny County Court of Common Pleas, where Will El was convicted of summary level disorderly conduct (18

4

Pa. C.S.A §5503(a)(4)) and Beyshaud El was convicted of summary level harassment (18 Pa. C.S.A §2709(A)(1)). (Transcript of Criminal Court ruling attached as Exhibit 7.)

30. On April 1, 2014, Judge Sasinosky of the Criminal Division of the Allegheny County Court of Common Pleas denied a suppression motion in Plaintiffs' case regarding allegations that the police action was in violation of their Fourth Amendment rights. Exhibit 8.

31. A person is guilty of disorderly conduct under 18 Pa. C.S. §5503(a)(4) if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. 18 Pa. C.S. § 5503 (a)(4).

32. A person is guilty of harassment under 18 Pa. C.S. §2709(a)(1), when, with intent to harass, annoy, or alarm another, the person strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same. 18 Pa. C.S. §2709(a)(1).

33. The City of Pittsburgh Bureau of Police has established a Manual of General/Procedural Orders to act "as governing directives for the administration and governing of the Bureau of Police." Gen. Order 12-2. (Selected General Orders attached at Exhibit 9 in the Appendix.)

34. All City of Pittsburgh police officers are required to maintain their manual, to read the orders contained therein, and to read any new or amended orders issued by the Bureau. General Order 12-2. (Ex. 9.)

35. The City of Pittsburgh maintains a policy regarding the use of force by its police officers. The policy is identified as General Order 12-6 (Ex. 9).

36. Section 3.0 of General Order 12-6 is titled "Use of Force" and provides in relevant part: "The City of Pittsburgh expressly forbids any use of force that is excessive…. To gain control

in physical confrontation, an officer may be required to use a force option which exceeds the level of force employed by the subject, and an officer may do so, as long as the force option utilized is reasonable under the circumstances." *Id.*

37. Section 3.4 of General Order 12-6 provides: "Any use of force as described herein shall be employed in accordance with the training that has been received by the involved member and in accordance with all written directives pertaining to the use of force." *Id.*

38. The City of Pittsburgh maintains a policy regarding the use of tasers by its police officers. The policy is identified as General Order 12-13 (Ex. 9).

39. All officers are and were required to complete the state-mandated basic recruit training and annual in-service training in order to be certified as municipal police officers. *See* 37 Pa. Code § 203.1 *et seq.*

40. Plaintiffs have not identified in sworn testimony or in signed discovery responses any specific facts of instances similar to the July 2, 2013 incident involving any alleged false arrest or excessive force. *See* Beyshaud El Depo., p. 53-54; Will El Depo., p. 42-44; Plaintiffs' responses to City's Interrogatory No. 9, Exhibit 10.

                                               Respectfully submitted,

                                               LOURDES SÁNCHEZ RIDGE
                                               City Solicitor

                                               s/ Matthew S. McHale, Esq.
                                               Matthew S. McHale, Esq. (Pa. ID No. 91880)
                                               Associate City Solicitor
                                               414 Grant Street
                                               Pittsburgh, PA 15219
                                               matthew.mchale@pittsburghpa.gov
                                               *Counsel for Defendants City of Pittsburgh, Reyne Kacsuta, Ryan Warnock, and Frank Welling*